UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

———

|  |  |  |
|---|---|---|
| DEANGELO LAUREL STOKES, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 1:13-cv-487 |
| | ) | |
| v. | ) | Honorable Paul L. Maloney |
| | ) | |
| COMMISSIONER OF | ) | |
| SOCIAL SECURITY, | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| Defendant. | ) | |
| | ) | |

This is a social security action brought under 42 U.S.C. §§ 405(g), 1383(c)(3) seeking review of a final decision of the Commissioner of Social Security finding that plaintiff was not entitled to disability insurance benefits (DIB) and Supplemental Security Income (SSI) benefits. On September 25, 2009, plaintiff filed his applications for DIB and SSI benefits. He alleged a March 1, 2008, onset of disability.[1] (Page ID 172-82). His disability insured status expired on June 30, 2011. Thus, it was plaintiff's burden on his claim for DIB benefits to submit evidence demonstrating that he was disabled on or before June 30, 2011. *See Moon v. Sullivan*, 923 F.2d 1175, 1182 (6th Cir. 1990).

Plaintiff's claims were denied on initial review. (Page ID 116-23). On February 7, 2012, he received a hearing before an ALJ. (Page ID 57-109). On February 23, 2012, the ALJ issued her decision finding that plaintiff was not disabled. (Op., Page ID 38-52). On March 8, 2013, the

---

[1]SSI benefits are not awarded retroactively for months prior to the application for benefits. 20 C.F.R. § 416.335; *see Kelley v. Commissioner*, 566 F.3d 347, 349 n.5 (3d Cir. 2009); *see also Newsom v. Social Security Admin.*, 100 F. App'x 502, 504 (6th Cir. 2004). The earliest month in which SSI benefits are payable is the month after the application for SSI benefits is filed. Accordingly, October 2009 is plaintiff's earliest possible entitlement to SSI benefits.

Appeals Council denied review (Page ID 27-29), and the ALJ's decision became the Commissioner's final decision.

Plaintiff filed a complaint seeking judicial review of the Commissioner's decision. He argues that the Commissioner's decision should be overturned on the following grounds:

1.   The ALJ committed reversible error by "not properly considering" a Veteran's Administration disability rating;

2.   The ALJ committed reversible error "by not properly weighing" the reports of plaintiff's treating physicians; and

3.   The ALJ committed reversible error "by improperly weighing the GAF scores in this case."

(Plf. Brief at 14,  docket # 14, Page ID 1016).  I recommend that the Commissioner's decision be affirmed.

## Standard of Review

When reviewing the grant or denial of social security benefits, this court is to determine whether the Commissioner's findings are supported by substantial evidence and whether the Commissioner correctly applied the law.  *See Elam ex rel. Golay v. Commissioner*, 348 F.3d 124, 125 (6th Cir. 2003); *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001).  Substantial evidence is defined as "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Heston v. Commissioner*, 245 F.3d 528, 534 (6th Cir. 2001) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *see Rogers v. Commissioner*, 486 F.3d 234, 241 (6th Cir. 2007). The scope of the court's review is limited.  *Buxton*, 246 F.3d at 772.  The court does not review the evidence *de novo*, resolve conflicts in evidence, or make credibility determinations.  *See Ulman v. Commissioner*, 693 F.3d 709, 713 (6th Cir. 2012); *Walters v. Commissioner*, 127 F.3d 525, 528 (6th Cir. 1997).  "The findings of the [Commissioner] as to any fact if supported by substantial evidence

shall be conclusive . . . ." 42 U.S.C. § 405(g); *see McClanahan v. Commissioner*, 474 F.3d 830, 833 (6th Cir. 2006). "The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. . . . This is so because there is a 'zone of choice' within which the Commissioner can act without fear of court interference." *Buxton*, 246 F.3d at 772-73. "If supported by substantial evidence, the [Commissioner's] determination must stand regardless of whether the reviewing court would resolve the issues of fact in dispute differently." *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993); *see Gayheart v. Commissioner*, 710 F.3d 365, 374 (6th Cir. 2013) ("A reviewing court will affirm the Commissioner's decision if it is based on substantial evidence, even if substantial evidence would have supported the opposite conclusion."). "[T]he Commissioner's decision cannot be overturned if substantial evidence, or even a preponderance of the evidence supports the claimant's position, so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Commissioner*, 336 F.3d 469, 477 (6th Cir. 2003); *see Kyle v. Commissioner*, 609 F.3d 847, 854 (6th Cir. 2010).

## <u>Discussion</u>

The ALJ found that plaintiff met the disability insured requirement of the Social Security Act from March 1, 2008, through June 30, 2011, but not thereafter. (Op. at 3, Page ID 40). Plaintiff had not engaged in substantial gainful activity on or after March 1, 2008. (*Id.*). Plaintiff had the following severe impairments: degenerative disc disease, post-traumatic stress disorder (PTSD), anxiety, and substance abuse.[2] (*Id.*). Plaintiff did not have an impairment or combination of

_____

[2]Plaintiff has a significant substance abuse history. Since 1996, the Social Security Act, as amended, has precluded awards of DIB benefits based upon alcoholism and drug addiction. *See* 42 U.S.C. §§ 423(d)(2)(C), 1382c(a)(3)(J); 20 C.F.R. §§ 404.1535, 416.935; *see also Bartley v.*

impairments which met or equaled the requirements of the listing of impairments.  (*Id.* at 4, Page

ID 41).  The ALJ found that plaintiff retained the residual functional capacity (RFC) for a limited

range of light work:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except: to sit/stand at will so long as he is not off task more than 10% of the workday.  He can occasionally climb, balance, stoop, crouch, kneel, or crawl.  He can perform simple, routine, repetitive tasks.  He can adjust to occasional changes in routine work setting.  He can occasionally interact with supervisors and coworkers, but should never interact with the general public.

(Op. at 6, Page ID 43).  The ALJ found that plaintiff's testimony regarding his subjective limitations

was not fully credible:

> Regarding the claimant's back impairment, the objective medical evidence reduces the credibility of the claimant's allegations but supports the above residual functional capacity.  Diagnostic imaging reports do not corroborate the claimant's allegations of a disabling back impairment.  In particular, it is noted that the x-ray of the claimant's lumbar spine in May 2009 was normal, with findings limited to mild spurring in one location (2F/1).  Similarly, a CT scan in January 2010 showed mild degenerative findings but was generally unremarkable (11F/17-18).  Overall, the claimant's longitudinal medical evidence of record shows primarily conservative treatment, limited to the use of prescription medications and a few physical therapy visits (1F-12F), none of which supports a finding of a disabling physical impairment.
>
> In June 2009, progress notes show the claimant is "able bodied" (2F/7).  In February 2010, R. Scott Lazzara, M.D., conducted a physical examination of the claimant, which was largely unremarkable, despite some limited, mild findings (6F).  At this visit, the evidence shows that the claimant reports his back pain started a long time ago; he denied any surgical procedure, reported a generally conservative course of treatment and acknowledged an ability to lift about 20 pounds (6F/3).  In support of Dr. Lazzara's mild findings, the evidence from April 2010 shows a discharge from physical therapy due to non attendance (11F/195)

---

*Barnhart*, 117 F. App'x 993, 998 (6th Cir. 2004); *Hopkins v. Commissioner*, 96 F. App'x 393, 395 (6th Cir. 2004).  The claimant bears the burden of demonstrating that substance abuse was not a factor contributing to his disability.  *See Cage v. Commissioner*, 692 F.3d 118, 122-25 (2d Cir. 2012); *see also Zarlengo v. Barnhart*, 96 F. App'x 987, 989-90 (6th Cir. 2004).  Because plaintiff was found not to be disabled, the ALJ was not required to decide the issue of whether substance abuse was material to a finding of disability.  *See Gayheart v. Commissioner*, 710 F.3d at 380.

which suggests that the claimant's back impairment was not as significant as he has alleged. In September 2010, the medical evidence of record shows the claimant sought a medical note to excuse him from working at Goodwill, allegedly due to subjective complaints regarding back pain and a lack of pain medications (12F/29, 31), none of which are corroborated by the objective, diagnostic medical evidence of record or any clinical findings (11F).

* * *

Regarding the claimant's mental impairments, the objective medical evidence reduces the credibility of the claimant's allegations but supports the above residual functional capacity. The medical evidence of record shows complaints of symptoms consistent with a diagnosis for post-traumatic stress disorder and a depressive disorder, generally well controlled with use of prescription medications (2F & 12F), along with generally normal mental status examination findings (2F). In April 2010, the medical evidence of record shows the claimant's post-traumatic stress disorder was medically stable and he reported feeling "pretty normal" with use of his medications (11F/189).

In September 2009, the evidence shows the claimant was facing homelessness and was seeking some form of transitional housing (2F/7). While there is evidence of an inpatient hospitalization in September 2010 (11F/24-25), the record shows this was a voluntary, pre-authorized admission sought by the claimant in order to attend a D-Track program from which the claimant was able to obtain day and weekend passes to occasionally leave the program (11F/24, 63, 69,89, 101). The evidence shows the purpose of this program was primarily to emphasize recovery from substance abuse, along with post-traumatic stress disorder symptoms (11F/47, 51). A number of the psychological tests the claimant underwent during treatment reflect some evidence consistent with symptom exaggeration and a "cry for help" (11F/53-57). A valid, Wechsler Adult Intelligence Scale-Fourth Edition (WAIS-IV) test showed a full-scale score of 86 (11F/54), despite evidence showing repeated substance usage and allegations from the claimant that he should have scored higher (11F/57). Evidence from this course of treatment reflects the claimant's primary concerns related solely to his lack of permanent housing and desire to obtain a service connection while in treatment (11F/64), which tells the undersigned the claimant's severe impairments were not truly disabling. Especially in light of some evidence suggesting noncompliance with medications (11F/90) and a number of missed appointments, discussed later in this decision. Furthermore, the evidence shows the claimant was successful discharged with conservative treatment suggestions, but without any limitations, from the program a few weeks later (11F/25 & 11F/56-57, 92).

Progress notes from the VA show that in December 2011, the claimant was not receiving any mental health treatment or any assistance with alcohol or drug usage, despite obtaining a service  related disability for post-traumatic stress disorder and reports of daily marijuana usage (12F/2-3). In November 2011, the evidence shows the claimant was not participating in appointments at the post-traumatic stress disorder program because he did not like his counselor and sought a transfer elsewhere (12F/6).

-5-

The record shows that Dr. Lazzara noted an appropriate mental health status (6F/4) that did not interfere with the claimant's ability to participate in a physical assessment or examination (6F).

While there is a request from the claimant for residential post-traumatic stress disorder treatment in November 2011 (12F/8) it is also noted that the claimant's job with Goodwill had ended, his lease was due to end the next month (12F/4), and he sought a housing voucher from the VA as he considered himself to be homeless (12F/4). This evidence is not supportive of a disabling condition related to post-traumatic stress disorder. Furthermore, the evidence shows the claimant had been receiving some sort of housing program through Goodwill and successfully completed the program in December 2011 (12F/16-17), which might reasonably explain his request for additional residential services.

\* \* \*

In analyzing the credibility of the claimant's subjective allegations, the undersigned notes that the claimant's demeanor was inconsistent with his testimony. While the claimant testified to an inability to sit for more than 20 minutes at one time, he was observed to sit rather comfortably for the entire length of the hearing, which lasted approximately 90 minutes. The claimant betrayed no evidence of pain or discomfort while testifying at the hearing. In addition, the claimant testified to experiencing a significant amount of anxiety, yet, at the hearing, he talked quite well and did not display any signs of anxiety. While the hearing was short-lived and cannot be considered a conclusive indicator of the claimant's overall level of pain or anxiety on a day-to-day basis, the apparent lack of discomfort or anxiety during the hearing is given some slight weight in reaching the conclusion regarding the credibility of the claimant's allegations and the claimant's residual functional capacity.

Another factor considered by the undersigned pertains to the types of treatment the claimant has received. The claimant has not generally received the type of medical treatment one would expect for a totally disabled individual. While the claimant has experienced increased post-traumatic stress disorder symptoms since seeing combat and leaving the Army, the evidence shows his treatment has been sporadic, while also showing some signs of noncompliance and quite a few missed appointments (2F/9-10, 25, 11F/27, 35, 195, 207 & 12F/16, 20-22, 32, 34, 36-38), all of which undercut the credibility of any subjective reports of disabling symptoms.

In analyzing the credibility of the claimant's subjective complaints, another factor considered was his daily activities. Although the claimant has described worsening (8E & 14E) daily activities which are fairly limited, two factors weigh against considering these allegations to be strong evidence in favor of finding the claimant disabled. First, allegedly limited daily activities cannot be objectively verified with any reasonable degree of certainty. Second, even if the claimant's daily activities are truly as limited as alleged, it is difficult to attribute that degree of limitation to the claimant's medical condition, as opposed to other reasons, in view of the relatively weak medical evidence and other factors discussed

in this decision (1F-12F). Overall, the claimant's reported limited daily activities are considered to be outweighed by other factors discussed in this discussion.  Thus, the undersigned find that these factors negatively affect the credibility of the subjective nature of the claimant's complaints of disabling symptoms.

In regards to side effects, while the claimant testified to experiencing a significant amount of medication side effects, the medical evidence of record does not reflect those same complaints.  To the contrary, the medical evidence of record shows the claimant reports his medications have been "very helpful" to him (2F/B, 37-38).  While a Third Party Function Report shows the claimant sleeps "late" due to his medications (3E/1) and the claimant alleges he stopped attending school due to drowsiness and he alleged drowsiness in his second function report (8E), the medical evidence from the claimant's medical providers does not reflect any of complaints of drowsiness (1F-12F).  In addition, the undersigned notes the claimant's fiancee reports he takes a medication to help him sleep (3E/7), when considered in conjunction with the claimant's allegations of sleepiness, would suggest is working effectively for him.  The medical record does not reflect complaints of excessive sleepiness, as alleged by the claimant (1F-12F).  Nor does his fiancee comment on this as a medication side effect in her Report (3E).  The undersigned finds it would be reasonable to expect to see complaints regarding side effects within the medical evidence of record and the lack thereof negatively affects the credibility of the claimant's subjective allegations (2F & 12F).

The evidence shows the claimant has provided conflicting evidence regarding the reason as to why he was no longer working at Goodwill.  While the claimant testified that he stopped working there due to his level of anxiety, he told the VA that he could not work there due to issues related to back pain (11F).  Although the inconsistent information provided by the claimant may not be the result of a conscious intention to mislead, nevertheless the inconsistencies suggest that the information provided by the claimant generally may not be entirely reliable.  This factor negatively erodes the credibility of the claimant's subjective allegations.

In the spring of 2008, the evidence shows the claimant was seeking employment (1F/5).  Similarly, the evidence from May 2009 shows the claimant was laid off from a mattress store and was "eager to get working fulltime" (2F/40), which undercuts his allegations of disabling mental and physical impairments.

(Op. at 7-13, Page ID 44-50).  Plaintiff could not perform any past relevant work.  (*Id.* at 14, Page

ID 51).  Plaintiff was 36-years-old as of the date of his alleged onset of disability and 40-years-old

on the date of the ALJ's decision.  Thus, at all times relevant to his claims for DIB and SSI benefits,

plaintiff was classified as a younger individual.  (*Id.*).  Plaintiff has at least a high school education

and is able to communicate in English.  (*Id.*).  The ALJ found that the transferability of jobs skills

was not material to a determination of disability.  (*Id.*).  The ALJ then turned to the testimony of a

vocational expert (VE).  In response to a hypothetical question regarding a person of plaintiff's age

with his RFC, education, and work experience, the VE testified that there were approximately 7,600

jobs in Michigan that the hypothetical person would be capable of performing.  (*Id.* at 14-15, Page

ID 51-52; *see* Page ID 106-07).  The ALJ found that this constituted a significant number of jobs.

Using Rule 202.21 of the Medical-Vocational Guidelines as a framework, the ALJ found that

plaintiff was not disabled.  (Op. at 14-15, Page ID 51-52).

## 1.

Plaintiff's initial claim is that the ALJ committed reversible error by "not properly

considering" a Veteran's Administration disability rating.  His argument is as follows:

> In the present case, the ALJ specifically wrote that the decision of the VA "was not binding"
> on her (25).  Guess again.  This Court is no doubt aware of the decisions in *King v
> Commissioner of Social Security*, 779 F. Supp. 2d 721 (E.D. Mich, Southern Division 2011),
> and *Gillaspy v Astrue*, 1:11-cv-303, Southern Division of Ohio Western Division, 2012).
> Both of these cases featured remands of cases where the ALJ had not considered (or else did
> not sufficiently consider) the fact that those plaintiff's had been granted VA benefits due to
> disability before they appeared before the ALJ to request Social Security Benefits.  In this
> case, the ALJ was clearly aware of the award of VA benefits, but she failed to give that
> award the weight required by the above case law.  The above two cases would both appear
> to demonstrate that such an omission is an error which a at the very least warrants a remand
> of this case to the Social Security Administration.

(Plf. Brief at 14-15, Page ID 1016-17; Reply Brief at 1-2, Page ID 1040-41).  Plaintiff's argument

is meritless.

It is well established that the issue of whether a claimant is disabled under the Social Security

Act is reserved to the Commissioner.  The social security regulations make pellucid that a decision

of any other governmental agency regarding disability is not binding on the Commissioner:

> A decision by any nongovernmental agency or any other governmental agency about whether you are disabled or blind is based on its rules and is not our decision about whether you are disabled or blind.  We must make a disability or blindness determination based on social security law.  Therefore, a determination made by another agency that you are disabled or blind is not binding on us.

20 C.F.R. §§ 404.1504, 416.904.  A VA finding that plaintiff is disabled may be considered, but it is not binding on the Commissioner.  *Id.*; *see* Titles *II and XVI: Considering Opinions and Other Evidence from Sources Who are not 'Acceptable Medical Sources' in Disability Claims; Considering Decisions on Disability by Other Governmental and Nongovernmental Agencies*, SSR 06-3p (reprinted at 2006 WL 2329939, at * 6-7 (SSA Aug. 9, 2006)).

Plaintiff's brief ignores the applicable regulations and SSR 06-3p.  Instead, he  provides the court with citations to two decisions from other districts which are clearly not binding on this court.  *See Michigan Elec. Employees Pension Fund v. Encompass Elec. & Data, Inc.*, 556 F. Supp. 2d 746, 761-62 (W.D. Mich. 2008).  The *Gillaspy* and *King* decisions are not persuasive authority.  The facts and foundation for the holding in *Gillaspy* are not remotely similar.[3]  *King* is factually distinct in that the ALJ gave the VA's finding that the plaintiff was 100% disabled "no consideration at all, except to cite the regulation that states another agency's disability determination does not bind the Commissioner."  779 F. Supp.2d at 235.  Further, more recent decisions of the United States Court

---

[3]In *Gillaspy v. Astrue*, 1:11-cv-303, 2012 WL 1969340 (S.D. Ohio June 1, 2012), Magistrate Judge J. Gregory Weherman recommended a remand to the Commissioner under sentence six of 42 U.S.C. § 405(g) for consideration of new evidence.  He noted that "none of the documents in the record before the ALJ noted the VA's one hundred percent disability finding."  *Id.* at 5.  Magistrate Judge Gregory found that plaintiff had carried his burden of demonstrating that the evidence he submitted in support of his request for a sentence six remand was new, material, and that there was good cause for the plaintiff's failure to present the evidence before the ALJ issued his decision.  *Id.*  Judge Susan J. Dlott of the Southern District of Ohio agreed, adopted the report and recommendation, and remanded the matter to the Commissioner under sentence six of 42 U.S.C. § 405(g) for consideration of new evidence.  *Gillaspy v. Commissioner*, 1:11-cv-303, 2012 WL 2408108 (S.D. Ohio June 26, 2012).

of Appeals for the Sixth Circuit have undermined plaintiff's argument that the *King* decision established a rule that the ALJ was required to give weight to the VA's decision.  The law is precisely the contrary.  The only requirement is that the ALJ consider the VA's decision.

In *Ritchie v. Commissioner*, 540 F. App'x 508 (6th Cir. 2013) the Sixth Circuit held that "the social security disability rules are clear" and the administrative law judge is not bound to accept the disability rating of the Veterans Administration.  *Id.* at 510 (citing 20 C.F.R. § 404.1504).  The disability rating from the Veterans Administration "is entitled to consideration," but is not entitled to any particular weight.  *Id.* at 510.  The Sixth Circuit found that when the ALJ stated that she was not bound by the VA's decision, but did consider it, she "clearly stated a proper understanding of the law."  *Id.*; *accord Deloge v. Commissioner*, 540 F. App'x 517, 518-19 (6th Cir. 2013).  Here, the ALJ clearly stated a proper understanding of the law, cited the applicable regulations and social security rulings, and determined that the VA record offering a conclusion that plaintiff was 70% disabled as a result of post-traumatic stress disorder (Page ID 206) was entitled to some weight, but failed to establish that plaintiff was disabled within the meaning of the Social Security Act:[4]

---

[4] The hearing transcript reveals that questions regarding the 70 percent disability rating that plaintiff had received from the VA were among the ALJ's first questions to plaintiff.  (Page ID 63).  "[T]he Veterans Administration and Social Security Administration define disability differently." *Lee v. Colvin*, No. 3-13-cv-1811, 2014 WL 1632162, at * 5 (N.D. Tex. Apr. 23, 2014).  The VA's standard is less demanding. *See Thomas v. Colvin*, No. 4:12-cv-179, 2013 WL 5962929, at * 8 (E.D. Va. Nov. 6, 2013).  A VA disability decision which cites no supporting medical evidence and is "essentially a form opinion, unaccompanied by any written report" provides the ALJ with very little to "consider." *Lucas v. Astrue*, No. 5:12-cv-131, 2012 WL 6917052, at * 9 (E.D.N.C. Dec. 28, 2012).  Because the VA gave a bare statement of a conclusion (Page ID 206), it would have been, at most, harmless error on the present record if the ALJ's opinion had not mentioned the VA's decision. *See Vanderpool v. Commissioner*, No. 12-13727, 2013 WL 5450276, at * 1 (E.D. Mich. Sept. 30, 2013) (collecting cases); *Saunders v. Commissioner*, No. 1:08-cv-1136, 2010 WL 1132286, at * 8 (W.D. Mich. Mar. 3, 2010).

> While the issue of disability is reserved to the Commissioner (SSR 96-5), pursuant to 20 CFR 404.1504 & 416.904 and SSR 06-3p, the undersigned has considered the disability decision from the Veteran's Administration, dated May 22, 2009, finding the claimant is entitled to a 70% service connected disability pension regarding post-traumatic stress disorder (8D). This decision receives some weight by the undersigned, while also noting the finding from the Veteran's Administration is not binding on this Agency.

(Op. at 12, Page ID 49).   I find no error.

**2.**

Plaintiff's remaining arguments are that the ALJ committed reversible error "by not properly weighing" the reports of plaintiff's treating physicians Dianne Shea, M.D., and Richard J. Meschino, Psy.D., and "improperly weighing" the Global Assessment of Functioning (GAF) scores they provided.  (Plf. Brief at 15-17, Page ID 1017-19; Reply Brief at 2-3, Page ID 1041-42).

A.    GAF Scores

GAF scores are subjective rather than objective assessments and are not entitled to any particular weight.  *See Kornecky v. Commissioner*, 167 F. App'x 496, 511 (6th Cir. 2006). "GAF examinations measure psychological, social, and occupational functioning on a continuum of mental-health status from 0 to 100, with lower scores indicating more severe mental limitations." *White v. Commissioner*, 572 F.3d 272, 276 (6th Cir. 2009).  "GAF is a clinician's subjective rating of an individual's overall psychological functioning.  A GAF score may help an ALJ assess mental RFC, but it is not raw medical data.  Rather, it allows a mental health professional to turn medical signs and symptoms into a general assessment, understandable by a lay person, of an individual's mental functioning." *Kennedy v. Astrue*, 247 F. App'x 761, 766 (6th Cir.  2007); *see Kornecky*, 167 F. App'x at 503 n. 7. The DIAGNOSTIC & STATISTICAL MANUAL OF MENTAL DISORDERS' (DSM–IV's) explanation of GAF scale indicates that "a score may have little or no bearing on the subject's social and occupational functioning." *Kornecky*, 167 F. App'x at 511; *see*

*Oliver v. Commissioner*, 415 F. App'x 681, 684 (6th Cir. 2011).  "Significantly, the SSA has refused to endorse the use of the GAF scale." *Bennett v. Commissioner*, No. 1:07-cv-1005, 2011 WL 1230526, at * 3 (W.D. Mich. Mar. 31, 2011).  In *Kornecky*, the Sixth Circuit observed: "We are not aware of any statutory, regulatory, or other authority requiring the ALJ to put stock in a GAF score in the first place."  167 F. App'x at 511.

"[T]he latest edition of the Diagnostic and Statistical Manual of Mental Disorders (DSM) no longer includes the GAF scale." *Davis v. Commissioner*, No. 1:13-cv-1556, 2014 WL 4182737, at * 8 (N.D. Ohio Aug. 21, 2014); *see Finley v. Colvin*, No. 12-7908, 2013 WL 6384355, at * 23 n. 9 (S.D.W.V. Dec. 5, 2013) ("It should be noted that in the latest edition of the [DSM], the GAF scale was abandoned as a measurement tool.").  " 'It was recommended that the GAF be dropped from the DSM-5 for several reasons, including its conceptual lack of clarity ... questionable psychometrics in routine practice.' " *Brown v. Colvin*, No. 12-513, 2013 WL 6039018, at * 7 n. 3 (E.D. Wash. Nov.14, 2013) (quoting DSM, 16 (5th ed., 2013).  "Moreover, a GAF score reflected an individual's functioning at a particular moment in time; one score was generally not helpful in determining whether Plaintiff's alleged impairment lasted at least 12 months, as is required to be considered disabled. *See* 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 416.905(a)." *Davis v. Commissioner*, 2014 WL 4182737, at * 8.

B.   Treating Physician Rule

The issue of whether the claimant is disabled within the meaning of the Social Security Act is reserved to the Commissioner.  20 C.F.R. §§  404.1527(d)(1) 416.927(d)(1); *see Warner v. Commissioner*, 375 F.3d 387, 390 (6th Cir. 2004).  A treating physician's opinion that a patient is disabled is not entitled to any special significance.  *See* 20 C.F.R. §§ 404.1527(d)(1), (3),

-12-

416.927(d)(1), (3); *Bass v. McMahon*, 499 F.3d 506, 511 (6th Cir. 2007); *Sims v. Commissioner*, 406
F. App'x 977, 980 n.1 (6th Cir. 2011) ("[T]he determination of disability [is] the prerogative of the
Commissioner, not the treating physician.").   Likewise, "no special significance"[5] is attached to
treating physician opinions regarding the credibility of the plaintiff's subjective complaints, RFC,
or whether the plaintiff's impairments meet or equal the requirements of a listed impairment because
they are administrative issues reserved to the Commissioner.   20 C.F.R. §§ 404.1527(d)(2), (3),
416.927(d)(2), (3); *see Allen v. Commissioner*, 561 F.3d 646, 652 (6th Cir. 2009).

Generally, the medical opinions of treating physicians are given substantial, if not controlling
deference.  *See Johnson v. Commissioner*, 652 F.3d 646, 651 (6th Cir. 2011).  "[T]he opinion of a
treating physician does not receive controlling weight merely by virtue of the fact that it is from a
treating physician.  Rather, it is accorded controlling weight where it is 'well supported
by medically acceptable clinical and laboratory diagnostic techniques' and is not 'inconsistent . . .
with the other substantial evidence in the case record.'"  *Massey v. Commissioner*, 409 F. App'x
917, 921 (6th Cir. 2011) (quoting *Blakley v. Commissioner*, 581 F.3d 399, 406 (6th Cir. 2009)).  A
treating physician's opinion is not entitled to controlling weight where it is not "well-supported by
medically acceptable clinical and laboratory diagnostic techniques" or  is "inconsistent with the
other substantial evidence in [the] case record."  20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *see
Gayheart v. Commissioner*, 710 F.3d 365, 376 (6th Cir. 2013) (A treating physician's medical
opinion is entitled to controlling weight where "two conditions are met: (1) the opinion 'is well
supported by medically acceptable clinical and laboratory diagnostic techniques'; and (2) the

---

[5]"We will not give any special significance to the source of an opinion on issues reserved
to the Commissioner described in paragraphs (d)(1) and (d)(2) of this section."   20 C.F.R. §
404.1527(d)(3), 416.927(d)(3).

opinion 'is not inconsistent with the other substantial evidence in [the] case record.'" (citing 20

C.F.R. § 404.1527(c)(2)).  The ALJ "is not bound by conclusory statements of doctors, particularly

where they are unsupported by detailed objective criteria and documentation." *Buxton v. Halter*,

246 F.3d 762, 773 (6th Cir. 2001).  An opinion that is based on the claimant's reporting of his

symptoms is not entitled to controlling weight.  *See Young v. Secretary of Health & Human Servs.*,

925 F.2d 146, 151 (6th Cir. 1990); *see also Francis v. Commissioner*, 414 F. App'x 802, 804 (6th

Cir. 2011) (A physician's statement that merely regurgitates a claimant's self-described symptoms

"is not a medical opinion at all.").

Even when a treating source's medical opinion is not given controlling weight, it should not

necessarily be completely rejected; the weight to be given to the opinion is determined by a set of

factors, including treatment relationship, supportability, consistency, specialization, and other

factors. *See Titles II and XVI: Giving Controlling Weight to Treating Source Medical Opinions*,

SSR 96-2p (reprinted at 1996 WL 374188 (SSA July 2, 1996)); 20 C.F.R. §§ 404.1527(c),

416.927(c); *Martin v. Commissioner*, 170 F. App'x  369, 372 (6th Cir. 2006).

The Sixth Circuit has held that claimants are "entitled to receive good reasons for the weight

accorded their treating sources independent of their substantive right to receive disability benefits."

*Smith v. Commissioner*, 482 F.3d 873, 875-76 (6th Cir. 2007); *see Cole v. Astrue*, 661 F.3d 931,

937-38 (6th Cir. 2011); *Wilson v. Commissioner*, 378 F.3d 541, 544 (6th Cir. 2004).  "[T]he

procedural requirement exists, in part, for claimants to understand why the administrative

bureaucracy deems them not disabled when physicians are telling them that they are." *Smith*, 482

F.3d at 876; *see Gayheart v. Commissioner*, 710 F.3d at 376.

A review of the record is necessary to put the evidence that the ALJ found persuasive and the evidence that plaintiff now emphasizes on appeal into context.[6]  Plaintiff claimed a March 1, 2008, onset of disability.   In April 2008, plaintiff was scheduled to begin participating in court-ordered anger management training in the wake of his third offense of domestic violence against his wife.  Plaintiff spent two months in jail[7] and received three months on a tether, was ordered to take anger management and was placed on probation for two years.  (Page ID 292).  Plaintiff had graduated from high school and had attended one year of college where he studied criminal justice and computer science.  (Page ID 293).  On October 10, 2008, plaintiff's parole/probation officer indicated that he had successfully completed an anger management class.  (Page ID 294).

On May 6, 2009, plaintiff was examined by Physician's Assistant Michael Lyons.  Plaintiff reported that he was assaultive and experienced "frequent nightsweats."  He sought and Lyons approved a referral for a PTSD evaluation.  (Page ID 375-76).  Plaintiff's "initial psychosocial assessment" was performed on May 14, 2009, by Kathleen Perry, a "Mental Health Clinical Social Worker."  (Page ID 341-45).  Ms. Perry noted that plaintiff had requested this evaluation for PTSD.  (Page ID 341).  Plaintiff gave a limited version of his criminal history.  He reported that he had "2

---

[6]Plaintiff's burden on appeal is much higher than identifying pieces of evidence on which the ALJ could have made a factual finding in his favor.  The Commissioner's decision cannot be overturned if substantial evidence, or even a preponderance of the evidence supports the claimant's position, so long as substantial evidence also supports the conclusion reached by the ALJ.  *Jones v. Commissioner*, 336 F.3d at 477.

[7]Claimants for DIB and SSI benefits are generally not eligible to receive benefits for any months they are confined in a jail or prison. See 42 U.S.C. §§ 402(x)(1)(A), 1382(e)(1)(A); 20 C.F.R. §§ 404.468, 416.1325.  Plaintiff reported that in addition to the jail time he served for domestic violence offenses, he "served 11 months in a federal prison in Chicago and received one year on parole" on a criminal conviction related to possession of counterfeit currency.  (Page ID 294).  All plaintiff's periods of incarceration documented in the medical records predate his alleged onset of disability.

previous charges for domestic violence, assault charges, [and had] spent jail time, altogether approximately 4 months." (Page ID 341-42). Plaintiff stated that he had graduated from high school and attended a year of college. He summarized his military history, including his combat assignments. (Page ID 342). Plaintiff stated that his post-discharge trade had been warehouse work. He stated that he was "currently collecting unemployment." (Page ID 342). Plaintiff reported a substance abuse history. He indicated that he had "infrequent/heavy periods of marijuana use, in 3 months, 6 months, 9 months intervals, with daily use." He stated that his most recent use had been in April 2009. (Page ID 342). He revealed that his divorce became final in 2008. He stated that he was engaged to his girlfriend. The social worker offered a diagnosis of PTSD and marijuana abuse in early full remission. She gave plaintiff a GAF score of 50. (Page ID 343).

On May 18, 2009, x-rays taken of plaintiff's lumbosacral spine revealed normal alignment, no evidence of acute fracture or dislocation, and vertebral body heights and intervertebral disc spaces were well preserved. There was evidence of mild endplate spurring. (Page ID 298).

On May 29, 2009, plaintiff had his initial appointment with Psychiatrist Dianne Shea. (Page ID 337). Plaintiff indicated that he had recently been laid off from his job at a mattress store. He was divorced and had three children. Plaintiff was collecting unemployment and reported that he was "eager to get working fulltime again." (Page ID 337). Dr. Shea offered a diagnosis of PTSD, severe, ongoing, depression, NOS, intermittent explosive disorder, agoraphobia without panic disorder. She gave plaintiff a GAF score of 40, prescribed medication, and scheduled plaintiff for a return visit in a month. Plaintiff returned on June 26, 2009. He reported to Psychiatrist Shea that he continued to receive unemployment. (Page ID, 334). He expressed frustration that his ex-wife was now living in Georgia and making it difficult for him to see his sons. (Page ID, 334-35).

-16-

Plaintiff related that he had a good female friend and was living with other friends.  He also enjoyed support from his mother and step-father.  He stated that he rarely smoked "pot," drank alcohol on a social basis, and smoked over ½ pack of cigarettes per day.  Plaintiff's memory was intact and his insight was fair and his judgment was good.  Dr. Shea gave plaintiff the same GAF score of 40, but noted that plaintiff's condition did not warrant hospitalization.  She scheduled plaintiff for a follow-up appointment in six months.  (Page ID 335-36).

On July 2, 2009, plaintiff had his initial meeting with Psychologist Richard Meschino (Page ID 322).  Plaintiff indicated that he had good social support from his family and fiancee.  He stated that he was unemployed and currently seeking employment.  He appeared to be moderately depressed and anxious.  Psychologist Meschino gave plaintiff a GAF score of 45 and offered a diagnosis of a depressive disorder, NOS.  (Page ID 332-33).

On July 7, 2009, plaintiff was examined by Physician's Assistant Lyons.  Plaintiff related that he was still dealing with issues related to PTSD, but was doing well with medication.  (Page ID 325).  Plaintiff was a tobacco user.  Lyons advised plaintiff as follows: "As your clinician, I want you to know that quitting tobacco/smoking is the MOST important thing you can do to protect your health."  (Page ID 328).  Plaintiff returned to Lyons on September 1, 2009.  Plaintiff related that he was feeling well, but had some concerns about coughing and wheezing.  He continued to smoke cigarettes.  (Page ID 315-17).  His lungs were clear.  He again received counseling regarding smoking cessation and was encouraged to exercise on a daily basis.  (Page ID 316-17).

On September 8, 2009, plaintiff met with Psychologist Meschino.  He expressed frustration with the VA's disability process.  He indicated that his sleep had improved with medication.

Meschino offered a diagnosis of PTSD and a depressive disorder, NOS. He gave plaintiff a GAF score of 45. (Page ID 311).

Plaintiff filed his applications for DIB and SSI benefits on September 25, 2009. On September 29, 2009, he met with a VA social worker. The social worker described plaintiff as "able bodied" and "pleasant and cooperative." Plaintiff was casually and appropriately dressed and his hygiene and grooming were good. His affect was normal. Plaintiff was directed to resources available in the community to assist him with his housing problem. (Page ID 304-05).

On October 14, 2009, plaintiff met with Meschino. Plaintiff appeared to be moderately anxious and depressed. His judgment and insight were estimated to be diminished when he was angry, but otherwise, his insight was fair to average and his judgment was undiminished. Psychologist Meschino offered a diagnosis of depressive disorder, NOS, and gave plaintiff a GAF score of 45. (Page ID 303-04).

On December 8, 2009, plaintiff had another meeting with Psychologist Meschino. Plaintiff reported few changes. He indicated that he had good social support while awaiting the processing of his disability applications. Plaintiff continued to use cannabis on occasion. Meschino offered a diagnosis of depressive disorder, NOS and gave plaintiff a GAF score of 46. (Page ID 393-95).

On December 17, 2009, plaintiff returned to Physician's Assistant Lyons. Plaintiff reported that he was feeling well, but had experienced pain in his upper lumbar spine. Lyons provided plaintiff with a stronger Naproxen prescription and ordered a CT scan. (Page ID 381).

On December 17, 2009, plaintiff appeared for his follow-up examination with Dr. Shea. (Page ID 391). Plaintiff reported that he was "feeling pretty much the same." He had not heard

anything regarding the progress of his VA disability claim.  Dr. Shea gave plaintiff a GAF score of 39 and scheduled a follow-up examination in 6 months.  (Page ID 391).

On December 24, 2009, Psychologist John Gallagher reviewed plaintiff's records.   (Page ID 442-59).  He offered his opinion that plaintiff was "moderately" limited in his ability to work in coordination or proximity to others without being distracted by them, in the ability to interact appropriately with the general public, and the ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes.  (Page ID 456-57).  Gallagher noted that there was no evidence that plaintiff's PTSD had interfered with his work in the past and there was no evidence that it would now.  Nonetheless, he thought it prudent to include a limitation restricting plaintiff to work with low contact with the public or coworkers.  He noted that plaintiff's treating sources had encouraged him to work and they helped set up training.  He offered his opinion that plaintiff retained the RFC to sustain simple, routine tasks with low interpersonal contact, was able to follow instructions, adjust to change, respond to normal supervision, and make decisions and judgments.  (Page ID 458).

On January 12, 2010, plaintiff returned to Psychologist Meschino.  He gave plaintiff a GAF score of 44 and his diagnosis of a depressive disorder, NOS remained unchanged.  (Page ID 704-05).

The CT scan of plaintiff's lumbar spine taken on January 15, 2010, indicated degenerative changes of the lower lumbar spine.  (Page ID 498-500).

On February 9, 2010, R. Scott Lazzara, M.D., performed a consultative examination (Page ID 460-66).  Plaintiff reported that he had stopped working as a truck driver in 2008 "because of his back."  (Page ID 462).  He was living on his own in an apartment.  He stated that he could perform his activities of daily living, but indicated that he could not bend to tie his shoes and had difficulty

-19-

putting on shirts.  He reported that he could drive short distances, but the vibration caused increased pain.  (Page ID 462).  Dr. Lazzara found that plaintiff had normal muscle strength and tone.  There was no evidence of joint laxity or effusion.  Plaintiff's grip strength was intact.  He could pick up a coin, button clothing, and open a door.  He had no difficulty getting on and off the examination table.  He had mild difficulty heel and toe walking, squatting, and hopping.  Straight leg raising tests were negative, but plaintiff did have paravertebral muscle spasm.  (Page ID 463-64).  Plaintiff walked with a guarded but relatively stable gait.  His back pain appeared to be primarily myofascial, but there was some evidence of mild facet arthropathy.  (Page ID 466).

On March 6, 2010, Dinesh Tanna, M.D. reviewed plaintiff's medical records.  (A.R. 434-41).  Dr. Tanna opined that plaintiff retained the RFC to frequently lift 10 pounds and occasionally lift 20 pounds.  He could sit for 6 hours in an 8-hour workday and stand and walk for a total of about 6 hours in an 8-hour workday.  (Page ID 469).  Plaintiff had postural limitations such as occasional balancing, stooping, kneeling, crouching and crawling.  (Page ID, 470).

On April 29, 2010, plaintiff met with Psychologist Meschino.  (Page ID 665).  Plaintiff reported that he had avoided cannabis use for several months and Meschino "encouraged [him] to continue this change."  (Page ID 667).  Plaintiff indicated that he was in regular contact with his family and his girlfriend.  He wanted to get married, but his girlfriend was not ready to take that step. (Page ID 665).  Meschino's diagnosis remained PTSD, depressive disorder, NOS and he gave plaintiff a GAF score of 45.

On August 24, 2010, plaintiff had an initial psychological assessment performed by Psychologist Timothy DeJong.  Plaintiff reported that he was experiencing PTSD symptoms.  He was smoking a "blunt" of marijuana on a daily basis.  (Page ID 639).  He stated that he was "waiting

for unemployment to start back up." (Page ID 640).  He reported that he had no mobility problems

that would prevent him from walking 10 to 15 minutes to get to another building.  He stated that he

was currently healthy and could attend to his own health needs.  (Page ID 641).

In September 2010, plaintiff sought voluntary admission to a VA medical clinic for treatment

of his substance abuse and PTSD.  He reported that he had been using marijuana for 16 years.  (Page

ID 505).  His drug screen on admission was positive for marijuana.  (Page ID 506).  He reported that

at peak, he was using marijuana 6-7 times per day.  He indicated that his current use level was a

"blunt a day."  (Page ID 522).  VA psychologists conducted a candid group therapy discussion

regarding how substance abuse inhibits healing from PTSD.  (Page ID 613).  Plaintiff related that

he had worked for a year and a half at an office outlet, but was let go when he went to jail on a

domestic violence conviction.  (Page ID  523).  He was in federal prison for 13 months between

2003 and 2005.  He had been convicted in 2003 for hustling counterfeit money on the streets.  He

reported his history of 3 domestic violence incidents.  (Page ID 524).  His approach to psychological

tests produced a number of invalid test results that could not be interpreted.  (Page ID 536).  VA

examiners found no evidence that plaintiff's orientation was impaired.  His memory was grossly

intact and his speech was clear and coherent.  His thought process was logical and there was no

evidence of a thought disorder.  There was no evidence of paranoia or delusional thought.  (Page ID

525).  He reported a history of low back pain.  His physical examination was essentially

unremarkable.  (Page ID 505, 617).  Psychologist Joan McDowell offered a diagnosis of PTSD and

substance abuse.  (Page ID 518). Plaintiff's discharge diagnosis was PTSD, mood disorder, NOS,

and marijuana dependency.  (Page ID 505).  His discharge GAF score was 53.  (Page ID 529).

Plaintiff reported that he was receiving unemployment benefits and was applying for service

connected disability.  He was referred to a vocational counselor.  (Page ID 529).  Plaintiff indicated that he would be following up with a Detroit VA where his substance abuse issues would be addressed with individual or group psychotherapy.  (Page ID 529-30).  The VA treatment team did not identify any medical problem that required attention.  (Page ID 530).

On April 19, 2011, plaintiff reported to a social worker that he had walked out of a "C & P exam" and realized that his car had a flat tire.  "[U]pon completion of fixing the flat tire, he left the medical center, realized he forgot to go to building 14 and check with the VASH[8] Case Manager."  Plaintiff expressed disappointment at having been removed from the VASH list after he missed this appointment.  (Page ID 989).

On November 22, 2011, plaintiff informed a social worker that he was receiving $1228 per month for a service connected disability.  He was living with his godmother, but was looking for something affordable to rent if a VASH voucher became available.  (Page ID 961).  On December 20, 2011, plaintiff informed a different social worker that he continued to "smoke pot daily."  He indicated that he was living with his sister until he obtained a "HUD/VASH voucher."  (Page ID 960).  He stated that he had been approved for a 70% service connected disability, but had not yet received a check.  (Page ID 960).  The social worker described plaintiff as alert, oriented, an less angry than in the past.  (Page ID 960).

---

[8]"The Department of Housing and Urban Development – VA Supportive Housing (HUD-VASH) Program is a joint effort between HUD and VA to move Veterans and their families out of homelessness and into permanent housing.  HUD provides housing assistance through its Housing Choice Voucher Program (Section 8) that allows homeless Veterans to rent privately owned housing.  VA offers eligible homeless Veterans clinical and supportive services through its health care system across the 50 states, the District of Columbia, Puerto Rico and Guam."  http://www.va.gov/homeless/hud-vash.asp (last visited Feb. 6, 2015).

Plaintiff argues that the ALJ did not follow the clear reporting of Dr. Shea and Psychologist Meschino regarding GAF scores. (Plf. Brief at 15, Page ID 1017). The GAF scores were not entitled to controlling weight because GAF scores are subjective assessments. *See Keeler v. Commissioner*, 511 F. App'x 472, 474 (6th Cir. 2013); *accord Kornecky*, 167 F. App'x 511.

Plaintiff argues that the ALJ failed to provide "good reasons" for the weight that she gave to the GAF scores. (Plf. Brief at 15-16, Page ID 1017-18). The ALJ gave a lengthy explanation why she found that the low GAF scores provided by Psychiatrist Shea and Psychologist Meschino were entitled to little weight:

> In October 2009, January 2010 and April 2010, Richard J. Meschino, Psy.D., assessed the claimant with a global assessment of functioning (GAF) score of 44-45, which represents a serious impairment in occupational functioning (2F/7 & 11F/181, 218). The GAF scale is a hypothetical continuum of mental health-illness found in the Diagnostic and Statistical Manual of Mental Disorders, 4th Ed. (DSM-IV), American Psychiatric Assoc., 1994. The DSM-IV acknowledges that "[t]he clinical and scientific considerations involved in categorization of [mental conditions] may not be wholly relevant to legal judgments, for example, that take into account such issues as individual responsibility, disability determination, and competency" (*Id.* at xxvii). Thus, a GAF score is a subjective, rather than an objective measure, and the diagnosis and assessment of a mental impairment under the criteria found in the DSM-IV are not entitled to great weight in making disability determinations. In addition, a GAF rating is intended to demonstrate an individual's overall mental status *at a specific point in time*, and is not to be construed as a longitudinal picture of an individual's overall mental functioning. The evidence shows this score was assessed when the claimant was facing transient, situational stressors involving a lack of housing and employment, along with anger (11F/218) while also showing denials of substance abuse usage (11F/181), later acknowledged (11F), a conservative treatment recommendation, inconsistent with the low GAF scores assessed (2F/6-7 & 11F). Thus, the undersigned gives little weight to these scores.

> In July 2009, Dr. Mechino assessed the claimant with a score of 45 (2F/36), at an initial evaluation. As noted above, the degree of severity reflected in this score is still not consistent with the mild to moderate findings within Dr. Mechino's report. Further, this score is inconsistent with other evidence showing the claimant is generally doing well overall (2F). As such, the undersigned gives little weight to this score, along with noting that a significant amount of time has passed since this score was assessed, which further limits its applicability to the claimant's mental health status.

-23-

In May, June and December 2009, Dianne K. Shea, M.D., assessed the claimant with GAFs of 39-40, which should reflect an impairment with reality or major impairment in several areas, including work, family, judgment, thinking or mood (2F/39, 42 & 11F/231). Yet, in April 2010, Dr. Shea assessed the claimant with a score of 45 (11F/189), which reflects some functional improvement. The undersigned does not find sufficient support within any of Dr. Shea's reports for such low scores (2F & 11F). Especially in light of the fact that the claimant's medications remained unchanged (2F/39 & 11F/231); he reported a better mood and feeling "normal" (2F/38& 11F/189) and despite a number of situational stressors involving relationships with others, substance abuse, missed appointments and a lack of employment (2F/38-39 & 11F). Further, the evidence shows the claimant's cognitive functioning was intact, his memory was fine and insight and judgment were fair and good, respectively (2F/37-39 & 40-43). The undersigned gives little weight to this score.

(Op. at 11, Page ID 48). The ALJ gave "good reasons" for the weight that she gave to the low GAF scores. The scores were subjective. They were provided during a period when plaintiff was not forthcoming regarding his substance abuse. The underlying progress notes did not support the level of restriction suggested by the GAF scores and plaintiff's medications were not adjusted. *See Dawson v. Commissioner*, 468 F. App'x 510, 513 (6th Cir. 2012); *Harper v. Commissioner*, No. 2:13-cv-123, 2014 WL 3845917, at * 16 (S.D. Ohio Aug. 5, 2014). The Sixth Circuit has consistently held that inconsistencies between proffered restrictions and the underlying treatment records are good reasons for discounting a treating source's opinions.[9] *See e.g.*, *Hill v. Commissioner*, 560 F. App'x 549, 550 (6th Cir. 2014); *Fry v. Commissioner*, 476 F. App'x 73 (6th Cir. 2012).

_____

[9]It is appropriate to note that Psychiatrist Shea and Psychologist Mechino never offered opinions that plaintiff's impairments would preclude plaintiff from performing work specified in the ALJ's factual finding regarding plaintiff's RFC. Plaintiff's arguments are founded on inferences drawn from the GAF scores. "A GAF score of 31-40 indicates some impairment in reality testing or communication (e.g., speech is at times illogical, obscure, or irrelevant) or major impairment in several areas such as work or school, family relations, judgment, thinking or mood. A GAF of 41 to 50 means that the patient has serious symptoms ... OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job). A GAF rating of 51 to 60 signals the existence of moderate difficulty in social or occupational functioning." *White v. Commissioner*, 572 F.3d at 276.

Plaintiff makes a passing argument in his reply brief that the ALJ acted unfairly by giving more weight to plaintiff's GAF scores above 50. (Reply Brief at 2, Page ID 1041) (citing *Boruff v. Astrue*, 648 F. Supp.2d 932, 943-44 (E.D. Mich. 2009). According to plaintiff, "*Boruff* indicated that using a score over 50 to indicate a lack of disability is not proper when there are a number of GAF scores that do in fact indicate disability." (Reply Brief at 2, Page ID 1041). This argument fails on multiple levels. First, the *Boruff* decision does not stand for the proposition cited. In *Boruff*, Judge Nancy Edmunds of the Eastern District found that on an administrative record where there were five instances where the plaintiff had been assigned GAF scores, all scores provided by different individuals, and four of the five supplying a GAF score of "50," the ALJ's "reasoning" that a GAF score of 50 was "inconsistent" with the record could not withstand scrutiny. 648 F. Supp.2d at 936, 943-44. *Boruff* is limited to its unique facts. It is not analogous to the facts of this case. "*Boruff* received virtually identical GAF scores from five different experts." *White v. Commissioner*, No. 1:13-cv-172, 2014 WL 1028888, at * 1 (W.D. Mich. Mar. 17, 2014). "Moreover, *Boruff* is not binding on this Court. Rather, this Court must follow the dictates of the Sixth Circuit, which has explicitly rejected the proposition that an ALJ should determine disability based solely on the unsupported, subjective determination of a GAF score." *White v. Commissioner*, 2014 WL 1028888, at * 1 (citing *Rutter v. Commissioner*, No. 95-5772, 1996 WL 379424, at *2 (6th Cir. July 15, 1996) and *Kornecky*, 167 F. App'x at 511) (noting that there is no "statutory, regulatory, or other authority requiring the ALJ to put stock in a GAF score in the first place"). The ALJ did not err in finding that plaintiff's GAF scores above 50 were more persuasive and consistent with the longitudinal medical evidence of record. (Op. at 12, Page ID 49).

## Recommended Disposition

For the reasons set forth herein, I recommend that the Commissioner's decision be affirmed.


Dated:   February 9, 2015          /s/  Phillip J. Green
                                   United States Magistrate Judge


## NOTICE TO PARTIES

Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you. 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b).  All objections and responses to objections are governed by W.D. MICH. LCIVR 72.3(b).  Failure to file timely and specific objections may constitute a waiver of any further right of appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *Keeling v. Warden, Lebanon Corr. Inst.*, 673 F.3d 452, 458 (6th Cir. 2012); *United States v. Branch*, 537 F.3d 582, 587 (6th Cir. 2008).   General objections do not suffice. *See McClanahan v. Comm'r of Social Security*, 474 F.3d 830, 837 (6th Cir. 2006); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006).